Buck *v.* Albee.

---

---

### ANSON BUCK *v.* CURTIS B. ALBEE.

#### Contract.   Illegality.   Sale of Spiritous Liquors.

In all cases where the contract grows immediately out of, or is connected with an illegal act, so that it becomes necessary to prove the illegal act, to enable the plaintiff to recover, then the contract is so far connected with the illegal act, that there can be no recovery on the contract.

But if the contract be so far unconnected with the illegal act, as to be founded upon a new consideration, it may be enforced.

Judicial tribunals will not lend their aid to enforce an illegal contract, or a contract growing out of an illegal act, but will leave the parties in the situation where they placed themselves.

And where the plaintiff, with others, was interested in a quantity of spiritous liquor, which was placed, by a mutual arrangement between the parties, in the hands of the defendant to sell, and he sold the same, in violation of the license law of 1846, and the plaintiff derived his title, to a portion of the

money received by the defendant upon such sale, through that arrangement or contract, and it also being necessary for the plaintiff, in order to sustain his action, to prove the arrangement under which the liquor went into the hands of the defendant, and the illegal sale itself, *it was held,* that the contract was so connected with the illegal sale of the liquor, that the plaintiff could not recover any portion of the money received upon such sale, by the defendant.

ASSUMPSIT.   The declaration contained four counts.   1. *For work and labor.*   2. *Goods sold and delivered.* · 3. *Money lent &c.* 4. *Money had and received.*

Plea, the general issue, and trial by jury.

It appeared from the evidence of the plaintiff on trial, that one Michael Kirk, of Fairfield, was the owner of a quantity of spiritous liquors, which were at Burlington, and Essex or Colchester; that being indebted to the defendant, on the second day of February, 1850, he transferred the liquors to the defendant, upon an agreement that the defendant should sell the same, and apply the avails, first to pay the debt, which said Kirk owed the defendant, secondly to pay the balance to Barlow & Keyes, or to their order, said Kirk owing Barlow & Keyes about sixty dollars, and they agreeing to hold the balance for the use of Kirk.

Immediately after making this agreement, said Kirk, and Albee, the defendant, went where the liquors were stored, and said Kirk delivered the same to the defendant, who soon after transported them to said Fairfield.

. It also appeared, that the plaintiff, Buck, had become and then was surety for the said Kirk, to the amount of $500 ; and that the day after the liquors were delivered to defendant, as aforesaid, the plaintiff, defendant, Kirk and Barlow, of the said firm of Barlow & Keyes, met at Fairfield, and it was then agreed between them, they all being present and agreeing thereto, that the defendant should sell the said liquors, collect and apply the avails to pay the debt said Kirk owed defendant, of about $100, also to pay all the expense defendant might incur for the freight and sale of the said liquors, and all his trouble in the matter ; and after that pay, first, the debt to said Barlow & Keyes, and then the balance to the plaintiff to indemnify him for being surety for said Kirk, as aforesaid.

This agreement was wholly verbal, and the part of the agree-

XXVI      13

ment which provided for paying the debt due Barlow & Keyes, was rescinded, it having been otherwise paid.

The testimony tended to prove that defendant, during the summer, sold the said liquors at Fairfield, in this state, to the amount of $600 or $700, and the proof tended to show that he received the money therefor.

There was no evidence tending to show, that the defendant had any license to sell said spiritous liquors. It also appeared, that at the time of the agreement, and at the time this suit was brought, the plaintiff was merely a surety for said Kirk, and that he had not paid any part of the debt for which he was surety, and that said Kirk had never paid any of it; but the plaintiff, since the suit was brought, had taken up the notes signed by himself and Kirk, and given his own note for the debt.

The defendant insisted and requested the court so to charge : 1. That the contract between Kirk, Albee and Buck, being for the sale of spiritous liquors in violation of the law, was founded upon an illegal consideration, and proposed an illegal object, and itself was illegal, and could not be enforced against Albee by Buck. 2. That it was an agreement on the part of Albee, to pay the debt of another, and void under the statute of frauds, it not being in writing. 3. That the agreement between the parties was executory, and therefore the plaintiff could not recover on the count, for money had and received. 4. That there was no evidence tending to show any demand upon Albee, by any one, for the balance of the avails of the liquor, and that without such demand no action would lie. 5. That Buck could not recover, he not having actually paid the debts on which he was surety, before bringing this action.

The court declined to charge as requested, but did charge the jury, that if they found that Albee agreed with Buck and Kirk to sell the said liquors, and pay over to Buck the balance of the avails that might be in his hands after first paying his, (Albee's) debt and expenses and for his trouble, and that defendant had received the money therefor before this suit was commenced, that plaintiff would be entitled to recover such balance, (if any) in this action, for money had and received ; and that plaintiff could recover such balance, although Albee sold the liquors in violation of law and

Buck v. Albee.

without a license, and although Kirk and Buck expected he would so sell them, when they entered into the agreement with him.

That the agreement was not within the statute of frauds. That the count for money had and received would lie, for the plaintiff to recover such balance, (if any,) in the hands of Albee; and that no demand was necessary upon Albee to sustain this suit, if Albee had received the money for the liquors, a reasonable time before the suit was brought, for Albee to have made the payment to Buck; and that plaintiff could recover such balance, though he had not paid any part of the debts upon which he was liable as surety for said Kirk when this action was commenced, if Kirk had not paid it, and plaintiff was still liable.

The court further told the jury, that there was no evidence tending to support any count in the declaration, except the count for money had and received, and that if plaintiff recovered he could not recover an amount greater than the sum for which he was holden for said Kirk, at the time of the agreement, and for which plaintiff had either paid, or was still holden, and that if Albee had not sold and received the money for the liquors when the suit was commenced, the plaintiff could not recover.

The jury returned a verdict for the plaintiff.

To the charge as given, and to the omission of the court to charge as requested, the defendant excepted.

———— ———— for defendant.

I. The court below erred in charging the jury, that if they found the agreement as claimed by the plaintiff, and that defendant had sold and received the money for the liquors, before the commencement of the suit, that plaintiff would be entitled to recover, although the defendant sold the liquors in violation of law, and without a license, and although the plaintiff and Kirk expected defendant would so sell them, at the time they entered into the agreement with him. *Booth* v. *Hodgson*, 6 Term 405. *Mitchel et al.*, v. *Cockburn*, H. B. 379. *Hawson* v. *Hancock*, 8 Term. 557. *Cannon* v. *Boyce*, 3 B. & A. 179. *Laughton et al.* v. *Hughes et al.*, 1 M. & S. 598. *Wilkinson* v. *Loudensack*, 3 M. & S. 117–126. *Bowry* v. *Bennett*, 1 Camp. 348. *Territt* v. *Bartlett*, 21 Vt. 184. *Smith et al.* v. *Allen et al.*, 23 Vt. 298. 2

Starkie on Ev. 7 Amer. Ed. 96, 1218. Chit. on Cont. 657, 658 and 659, and authorities there cited.

II. That the agreement, upon which plaintiff founds his right of recovery, having for its object the sale of the liquors in violation of law, is illegal and tainted with moral turpitude; that the plaintiff is *particeps criminis*, and the court will not lend their aid in furtherance of this illegal transaction.

III. That if any part of the entire consideration, or any branch or part of the matters promised, be in violation of law, no action will lie; for in such a case the law will not lend its aid to either party. *In pari delicto melior conditio defendentis.* Cro., J. 103. 2 Starkie on Ev. 63 and note.

IV. That when money or other property is advanced or furnished to effectuate an illegal purpose, and is so applied, no case is found where the *particeps criminis* has been allowed to recover for the avails of the illegal transaction. 8 Term 577, above cited. 1 M. & S. 594. 2 Starkie on Ev. 78.

V. The law will not raise an implied promise in favor of a *particeps criminis*. *Mitchell* v. *Cockburn*, above cited. *Sullivan* v. *Greaves*, in Park on Ins. 8. *Cannon* v. *Boyce*, 3 B. &. A. 179.

*H. R. Beardsley* for plaintiff.

There can be no doubt, on general principles that by the arrangements reported in the bill of exceptions, the plaintiff would be justly and legally entitled to the monies realized by the defendant from the sale of the liquors; and that the defendant, upon principles of equity and good conscience cannot withhold them from the plaintiff.

But the defendant contends, that he is shielded and protected in the violation of these moral obligations, by the statute law of this state, limiting and regulating the traffic in spiritous liquors. It now remains to be seen whether that law, under the circumstances of this case, will aid the defendant in his atttempt to cheat the plaintiff out of a just and honest claim.

I. The first knowledge or connection of the plaintiff with the liquors, was after they had been transferred by Kirk, the owner, to the defendant, for the purpose of sale, with an agreement between them to apply the avails in a particular way then specified; after this sale and delivery, the terms and conditions

thereof were only so far varied, as to give the plaintiff a right to the money when realized in lieu of other persons.

In this was there any violation of the law by the plaintiff? Is he to be treated as standing in *pari delicto?* We think not.

II. When did the plaintiff's right first accrue? Not until the money was received by and in defendant's hands. The plaintiff had no right in the property itself, he could neither compel nor prevent a sale. The defendant was wholly independent of the plaintiff, and not subject to his direction or control, nor in any way liable to the plaintiff till he received the money.

Hence, whether the sale of the liquors, by the defendant, was in violation of the statute or not, it can in no way affect the right of the plaintiff to the money, after it had been received by the defendant.

III. If then the plaintiff is to be defeated in his action, it must be upon the ground that the consideration for defendant's promise set up in the declaration is tainted with illegality.

Now what was the consideration for defendant's promise? Clearly not the delivery of the property by Kirk to him for the purpose of sale—not anything which passed from plaintiff to defendant of any interest in, or claim upon said property, for he had none; but the consideration for defendant's promise, grew out of the single act of receiving the money. Can there be any doubt but that this is a legal consideration?

Although the transaction might be illegal as between Kirk and defendant, does it follow that Kirk's creditors, for whose benefit Kirk and the defendant entered into the arrangement, must fall under the same condemnation? We insist not.

IV. The plaintiff cannot be defeated of his right to the money, without proof that he had knowledge that defendant had no license, and did not intend to procure one, but intended to sell the liquors without a license. Without this, what has plaintiff done to forfeit his right to the money? But assuming the plaintiff did know that defendant had no license, how he is to be affected by that? He could not prevent a sale of the property by the defendant, nor could he compel him to get a license.

The defendant's turpitude in endeavoring to cheat the plaintiff out of his honest rights, is only equalled by the ingenuity of his counsel in providing the necessary instruments of attack.

The opinion of the court was delivered by

ISHAM, J.   The fact is found in this case, that one Michael Kirk was the owner of a quantity of spiritous liquor, and that on the second day of February, 1850, he transferred the same to the defendant to be sold.   Its avails were to be applied to pay the debt due from Mr. Kirk to Mr. Albee, then the claim due Messrs. Barlow & Keyes, and the surplus was to be held subject to the order of Mr. Kirk.

The contract, under which the plaintiff claims the money for which this suit is brought, was made the next day after the transfer of the liquor to the defendant, and while it was in his hands. The plaintiff and defendant, Mr. Kirk and Mr. Barlow were present and parties to that arrangement ; in which it was agreed, that the defendant should proceed and sell the liquor, and apply the avails in payment of the debts before mentioned, and the balance was to be paid to the plaintiff on the claim for which he was liable as surety for Mr. Kirk.   This arrangement gave the plaintiff an interest in the liquor before its sale, as much so, as that of the other parties to that contract.   The liquor was afterwards sold under that arrangement, and the money was received by the defendant. The question arises, whether this was a contract of that illegal character, which will prevent the plaintiff from recovering the money received by the defendant on that sale.

The sale of the liquor by the defendant was made without license ; and by the act of 1846, which was in force at that time, the sale was obviously illegal and void.   If a suit had been brought against the purchaser of the liquor for the price, it could not have been sustained ; for the law will not lend its aid to enforce such a contract, but will leave the parties in the situation in which they have placed themselves.   In 2 Kent's Com. 588, the rule is given, "That if the contract grows immediately out of, or is connected "with an illegal act, a court of justice will not enforce it.   But if "it be unconnected with the illegal act, and founded on a new con-"sideration, it may be enforced."   In the application of this rule it may be observed, that in all cases, where it is necessary to prove that illegal contract and sale, to enable the plaintiff to recover, then the contract is so connected with the illegal act that a recovery cannot be had.   But if the right can be established without such proof, the plaintiff may recover ; for the claim is unconnect-

Buck *v.* Albee.

ed with the sale, and rests on a new consideration. In Story on Cont. 146, it is said, " That if an act, in violation of either stat- " ute or common law, *be already committed,* and a subsequent agree- " ment be entered into, which though founded thereupon, constitu- " ted no part of the *original inducement,* or *consideration therefor,* " such an agreement is valid." If the money arising from the • sale of this liquor had been received by the defendant, and the plaintiff had afterwards obtained an order for the payment of the same to him, and the defendant had agreed-to pay it, the action could be sustained; as the plaintiff in no sense, would be a party to the illegal contract of sale. The knowledge that the money in the defendant's hands arose from an illegal transaction, would make no difference; for, in such case, it would be sufficient to prove the money in his hands, and the agreement to pay the same to the plaintiff, without showing the contract or arrangement under which the defendant received it. It is said in Story on Cont. 146-7, " That this rule, and the distinction which is made, will be found " to form the principle which lies at the root of many apparent " contradictory cases, and to offer the best solution to the various " and opposing decisions." *Armstrong* v. *Tober,* 11 Wheat. 258.

It is expressly stated in the case, that before the liquor was sold, and while it was in the defendant's hands, the plaintiff and the oth- er parties in interest agreed, that the defendant should proceed and sell the liquor. When the defendant was selling it, he was not on- ly acting for his own interest, but for the plaintiff, and the other party also. The plaintiff as much directed the sale, as the others, • who were equally interested with him, and was as directly con- cerned in the violation of the statute, as was the defendant him- self. To sustain this action, it will be necessary for the plaintiff • to prove the contract under which the liquor came into the defend- ant's hands; the mutual arrangement for the sale of it; the illegal sale itself; and the receipt of the money by the defendant. It is through that contract and sale, that the plaintiff derives his title. If the • plaintiff is allowed to recover, it is not upon a mere receipt of the money by the defendant, and a subsequent agreement to pay the same to the plaintiff; for, no such subsequent agreement has been made ; but it must rest upon a direct adjudication of the court, sus- taining that illegal contract and sale. The court can no more en- force that contract, or see to the distribution of the proceeds of

that sale between these parties, than they can enforce any illegal contract, or see to the distribution of money between parties, which has arisen from any other illegal adventure. The remarks of Justice BALDWIN, in the case of *Batte* v. *Coleman*, 4 Peters 184, are appropriate and emphatic. "If either has sustained a loss by "the bad faith of the *particeps criminis*, it is but a just infliction "for premeditated fraud. He must not expect, that a judicial tri- "bunal will exert its powers, to shift the loss from one to another, "or to equalize the benefits or burthens, which may have resulted "from the violation of every principle of morals, and of law."

The charge of the court, therefore, we think was incorrect in saying "that if the defendant agreed with the plaintiff and Mr. Kirk to sell the liquor, and pay the balance to the plaintiff, after paying his own claims and the debt due to Barlow & Keyes, that the plaintiff would be entitled to recover, although the defendant sold the liquor in violation of law, and without a license, and although it was expected by the plaintiff and Mr. Kirk, that he would so sell the same, when they entered into the agreement with him." This charge will enable the plaintiff to recover, and reap the benefit of a sale made by his procurement and directions, and in direct violation of the statute. The law will sustain no such action.

The judgment must be reversed, and the case remanded.