PROSPER MONNET et al., Respondents, *v.* HENRY MERZ, as Survivor, etc.

Where but one of the parties to an action appeals and the appellate court finds error injurious to the appellant, the judgment may not be sustained because of the fact that there was also error injurious to the respondent, and that the former has upon the whole a more favorable judgment than he was entitled to; in such case one error may not be offset against the other; *it seems* this may be done where both parties appeal.

Plaintiffs, who were foreign manufacturers, consigned goods to H. & M. of New York city, of which firm the defendant is the survivor, under an agreement by which said firm were to pay freight and import duties upon the goods consigned and to advance to plaintiffs a percentage of the invoice price. The agreement having been terminated, said firm

refused to deliver the goods it then had on hand unless plaintiffs would pay the advances thereon, although it was indebted to plaintiffs upon an account stated, for sales made in a sum much larger than the amount of the charges. In an action to recover the amount of the firm's indebtedness it appeared that the market value of the goods on hand depreciated after the demand. *Held,* that defendant was properly charged with the market value at that time.

Defendant set up as a defense the pendency of an action brought by the federal government against his firm to recover the value of a part of the goods so consigned as a penalty for fraudulent under-valuation thereof, in the invoices used in entering said goods at the custom house; the penalty claimed was in excess of the amount claimed in this action. It appeared that the invoices were prepared and made up by plaintiffs, their consignees having nothing to do therewith, and having no knowledge that there was any under-valuation. *Held,* that while upon the assumption that defendant would be entitled to reimbursement for any sum he would be obliged to pay in said action, the facts might have justified the court in staying the trial herein until the determination of that action, its pendency was not available as a defense.

Also *held,* that there was no liability to the government in suits for penalties or forfeiture against a consignee unless an actual intent on his part to defraud was shown, and if a liability should be established against defendant it would be for the wrongful acts of his firm and so, would furnish no grounds for a claim against plaintiffs, either of reimbursement or contribution.

While in such a case this court may not look into the merits of the controversy in the action by the government, it may examine the legal principles applicable, and determine whether a recovery on those principles would support a claim against plaintiff for reimbursement in this action.

Defendant also set up as a counter-claim, and it appeared, that a prior suit brought by the United States against defendants' firm for under-valuation of other goods consigned to them by plaintiffs, was settled by its paying an amount fixed as damages, and that it also paid certain counsel fees therein. The referee found that defendants' firm had been specially authorized to employ counsel, and that the amount paid by them was reasonable and proper, but that prior to the settlement any authority given defendants to compromise had been revoked; he directed that the amount paid the government and for counsel fees should be divided equally between the parties. Defendants alone excepted. *Held* error; that defendants should have been credited with the full amount of counsel fees paid, and while, if as it appeared here, plaintiffs did not authorize the compromise, they were not liable for any part of the sum paid thereon, as they had not excepted or appealed, this court could not take cognizance of the error.

Reported below, 25 J. & S. 576.

(Argued April 15, 1891; decided June 2, 1891.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made June 28, 1889, which affirmed a judgment in favor of plaintiffs, entered upon the report of a referee.

This action was brought to recover an indebtedness claimed to be due plaintiffs from the firm of Holler & Merz, the original defendants, of whom the present defendant is the survivor.

The facts, so far as material, are stated in the opinion.

*William Man* for appellant. This action cannot be maintained while the present government suit is pending undetermined against these defendants. (U. S. R. S. §§ 2839, 2864.) The defendants were entitled to be credited, as between themselves and plaintiffs, with the whole amount paid by them to settle the first goverment suit, with the counsel fees, and the costs paid to the district attorney. (*Armstrong* v. *Gilchrist*, 2 Johns. Cas. 424; Story on Agency, §§ 339, 340; *Coventry* v. *Barton*, 17 Johns. 142; *Powell* v. *Newburg*, 19 id. 284–289; *Howe* v. *B. R. R. Co.*, 37 N. Y. 297; 38 Barb. 124; *Fowler* v. *N. Y. G. E. Bank*, 67 N. Y. 138; 6 Hun, 186.) The rightful possession by defendants of the goods could only be turned into a conversion on their part, of the goods, by a demand on the plaintiffs' part when they had a right to demand, and by a wrongful refusal of defendants to deliver. (*Hall* v. *Robinson*, 2 N. Y. 293; *Jessop* v. *Miller*, 1 Keyes, 321; *Whitney* v. *Slawson*, 30 Barb. 456; *Rawley* v. *Brown*, 18 Hun, 321.)

*William H. Arnoux* for respondents. It was properly decided that the pendency of the second United States suit was not a bar to a recovery in this action. (*U. S.* v. *Auffmordt*, 122 U. S. 197; *U. S.* v. *Newmark*, 3 Sawy. 584; *U. S.* v. 99 *Demijohns Rum*, 8 Fed. Rep. 485; *U. S.* v. *3 Trunks*, 8 id. 583; *Lewey* v. *U. S.*, 15 Black. 1; 40 *Sacks Wool*, 14 Fed. Rep. 643; *The Purissima Conception*, 24 id. 358; Story on Agency, §§ 344, 345; *Armstrong* v. *Taler*, 11 Wheat. 258; *M. E. C. Home* v. *Thomson*, 108 N. Y. 618.) The defendants were not entitled to any credit whatever on account of the pay-

ment made by them in compromising the first government suit. (*Roch* v. *Duviard*, 4 N. Y. Supp. 156.)

Brown, J.   The plaintiffs were manufacturers of aniline colors or dyes at La Plaine, Switzerland, and the original defendants were their consignees and agents at the city of New York for the sale of such dyes.

By the agreement between the parties, the defendants were to pay freight and import duties upon the goods, advance to the plaintiffs fifty per cent of the invoice price, and render account of sales semi-monthly, deducting and receiving a commission of eight and one-half per cent on the sales for their services.

This agreement was terminated in June, 1883.

The complaint alleges an indebtedness from the defendants upon an account from January 1, 1880, to July 1, 1883, of eighteen thousand nine hundred and fifty-eight dollars and forty cents, and a demand and refusal of payment.

That there was a large indebtedness to the plaintiffs appeared from an account rendered by the defendants.   Some items of account were in dispute on the trial, but are not before us on this appeal.

On the 26th of June, 1883, the defendants had in hand of the consigned goods 1,590 pounds of the market value of that date of $4,995.05.   The referee charged the defendants with this amount, giving them credit for the duties and other charges that had been paid.   This is now claimed by the defendants as erroneous.

After the date above-mentioned the value of the goods declined.   A part were sold by defendants for $1,739.55 and the value of the remainder, at the time of the trial, was shown to be $947.36, and it is the defendants' claim that these two last-mentioned sums should be substituted for the value of the goods in June, 1883.

We are of the opinion that the referee's ruling was correct.

While the referee has not found specifically that a demand was made for the goods by the plaintiffs such fact appears in the evidence, and that the defendants refused to deliver them

to the plaintiffs' agent unless they were paid a sum upwards of six thousand dollars, which represented the advancements on the goods and the amount paid for freight and duties.

The defendants had no right to make such payment a condition of the delivery, as their own account showed a làrge indebtedness at that time to the plaintiffs for sales, and as they had, in their answer asked for an accounting, they were properly charged with the value of the goods on hand at the termination of the agency.

And we may presume a finding in accordance with the evidence in the case, that they refused to deliver the goods upon plaintiffs' demand.

The main defense pleaded by the defendants and the one mainly relied on on this appeal was the pendency, undetermined, of an action brought by the United States against the defendants to recover, as a penalty, the value of a part of the goods. consigned to them by the plaintiffs, and which value was in excess of the amount claimed in this action.

This penalty was claimed upon the ground that the goods were under-valued in the invoices which defendants had used in entering said goods at the custom house.

It appeared in this action that such invoices were prepared and made up by the plaintiffs, and with them defendants had nothing to do, and if they were false under-valuations of the goods, for the purpose of evading the revenue laws, such acts were the plaintiffs' and not the defendants'.

The defendants alleged in their answer and claimed upon the trial that this action could not be maintained while the government suit was pending, but the referee overruled this claim, to which an exception was taken.

Upon the assumption that defendants would have been entitled to be reimbursed for any sum which they would have been compelled to pay in the government suit as a penalty for false and fraudulent valuations put upon the goods by the plaintiffs, such facts might have justified the court in staying the trial of this action until the determination of the government suit.

The defendants could thus have been enabled to ascertain the amount of their liability, and possibly asserted it as a counter-claim to the cause of action alleged in the complaint. Whether such an application was made or not we are not informed.

But as a defense the mere pendency of the government suit was not available. It had no connection with the cause of action set up in the complaint and could not be pleaded either in bar or in abatement.

But passing this question it is clear that there was no liability to the government upon the part of the defendants.

The government suit was based upon sections 2839 and 2864 of the Revised Statutes.

These sections were construed by the Supreme Court of the United States in *U. S.* v. *Auffmordt* (122 U. S. Rep. 197), and it was there held that section 2839 applied only to purchased goods, and that there could be no recovery under it for the forfeiture of the value of imported merchandise, the property of the foreign manufacturer, against the person to whom it was consigned for sale on commission, the forfeiture being claimed on the ground that the merchandise was entered at invoice prices lower than the market value at the place of exportation, and that section 2864, so far as it provides for a forfeiture of the *value* of merchandise, was repealed by section 12 of the act of June 22, 1874.

The complaint in the government suit against defendants sought to recover the value of the goods, and there was no attempt made to forfeit the goods themselves.

Under the decision cited, therefore, there was no liability. But the whole current of authority in the United States Courts is to the effect that in suits for penalties and for forfeitures against a consignee an actual intent on his part to defraud must be shown. ( *U. S.* v. 90 *Demijohns of Rum*, 8 Fed. Rep. 485 ; 40 *Sacks of Wool*, 14 id. 643 ; *The Purissima Concepcion*, 24 id. 358).

In this case it appears from findings made at defendants' request that no such intent existed and that defendants had no

knowledge of the cost of manufacture of the goods and were ignorant of any undervaluation in said invoices in entering the goods at the custom house.

It is very clear, therefore, we think that if the Government could establish any liability against the defendants it would be for their own wrongful acts and upon grounds that would not sustain a claim on their part against plaintiffs either for reimbursement or contribution.

While it is true as claimed by the learned counsel for the defendants that in deciding this question we should not look into the merits of the controversy between them and the government or attempt to decide or forecast what would be the result of that suit we may examine the legal principles that are applicable to and must govern the determination of that and all kindred cases and determine whether a recovery upon such principles would support a claim for reimbursement by defendants against the plaintiffs.

Applying, therefore, the rules of law that have been settled by the highest court having jurisdiction over 'cases of violations of the revenue-laws, we must reach the conclusion that the general government had no claim against the defendants which if paid and satisfied could be made the basis of a recovery or counter-claim against the plaintiffs.  The referee's conclusion that the government suit was not a defense, nor an obstacle during its pendency to the prosecution of this action was, therefore, correct.

A further counter-claim was pleaded and asserted by defendants growing out of the settlement and compromise of another and prior government suit for undervaluation of other goods consigned to them by plaintiffs.

Such suit appears to have been settled by the payment to the government of the sum of $10,002.19, and defendants paid to the counsel employed to defend the same the sum of $2,250.

The grounds of that suit were precisely similar to those alleged in the suit already discussed and what has heretofore been said disposes of the defendants' claim for reimbursement from plaintiffs of the sum paid to the government so far as the

plaintiffs' liability therefor rested upon the sole fact of the recovery against the defendants based upon the facts set out in the government complaint.

There was, however, an attempt at the trial to prove authority to the defendants from the plaintiffs to settle with the government and an implied promise to repay defendants growing out of the delegation of such authority.

The referee found that prior to the settlement of the suit any authority given to the defendants by the plaintiffs to compromise with the government was revoked, and such finding has ample support in the evidence. The referee found, however, that the defendants were specially authorized to employ counsel in such suit on plaintiffs' behalf, and that the sum paid to such counsel was a reasonable and proper sum for their services.

The referee further found as a conclusion of law that the sum of $12,252.19 paid to settle the government suit and for counsel fees therein should be divided between the parties and in this conclusion the plaintiffs acquiesced, but defendants excepted and appealed.

As already stated the plaintiffs not having authorized the compromise with the government, were not liable for the sum paid by the defendants.

By what principle the learned referee reached the conclusion that they were liable for one-half we need not inquire, as plaintiffs have accepted that decision and no question as to its correctness is before us. But as to the sum paid for counsel fee we think that the defendants were entitled to be reimbursed. Counsel were employed in plaintiffs' behalf by their specific authority and they had doubtless sufficient interest in the charge made to be represented at the trial and to keep informed as to the progress of the suit.

The respondent urges that the referee was wrong in charging them with one-half of the sum paid to the government and that as the defendants have really had a more favorable decision than they were entitled to the judgment should not be further modified in their favor.

If the plaintiffs had appealed we could doubtless offset one error against the other, if there was an error in the referee's decision.

But we cannot take cognizance of an error to which no exception was taken, and from which no appeal was made, and we must assume that there was evidence to sustain the referee's decision.

We are necessarily confined in our examination of the case to the questions raised by the defendants' exceptions.

The defendants are entitled, therefore, to the allowance of the whole amount paid to counsel.

No other exception in the case requires consideration.

The judgment should be modified by deducting from the amount of the recovery as stated in the referee's report the sum of $1,125, with interest from March 9, 1883, and as modified affirmed without costs.

All concur.

Judgment accordingly.