## PURCHASE OF DEBENTURES AS CONSIDERATION FOR BEING GRANTED A MORTGAGE LOAN.

[Hamilton County Court of Common Pleas].

HEINTZ AND WILLIAMS, RECEIVERS, v. HARLEY E. SAWYER ET AL.

Decided, April, 1903.

*Foreclosure of Mortgage—Transaction in Obtaining Loan Against Public Policy—Debentures of the Nature of a Scheme of Chance.*

Where a loan of money was evidenced by a note with a real estate mortgage given to secure repayment, and as part of the consideration of the tranaction the mortgagor, by a contemporaneous written contract, agreed to purchase shares or debentures in the lending company, which debentures partook of the nature of scheme of chance or lottery, the lender can not maintain a suit to foreclose such mortgage, nor can the mortgagor have affirmative relief by cancellation or in a court of equity, as the transaction is against public policy and void, and the court will refuse its aid to either party.

PFLEGER, J.

The receivers of the Interstate Savings & Investment Company brought suit in equity to foreclose a number of mortgages upon real estate. The consideration was money borrowed, evidenced by note and mortgage. Contemporaneously with the execution of such instruments a separate written contract was made between the same parties by the terms of which the mortgagors were to purchase a certain number of debenture certificates in said company, with coupons attached, requiring monthly payments to be made thereon for a period of at least three years. This contract provided that if such payments were made for three years the mortgagors were to be relieved from the payment of interest on the principal sum borrowed, and that one-half of the monthly installment would be credited on the loan and the other one-half retained by the company as a consideration for the loan. There was part performance on each side; the company paid over the total amount of the loan, and certificates were purchased by the mortgagors. The debenture certificates were issued upon a plan by which the company agreed to redeem them earlier than the reserve fund could reasonably pay the stipulated endowment values, except from new business and lapses. Such certificates were subject to a

prize or chance of being redeemed at a still earlier period by the "numeral apart" plan, which latter was declared to be a lottery, and the former a fraudulent scheme, and both held to be against public policy and void by the Supreme Court in *State* v. *Interstate Investment Company,* 64 O. S., 283.

Two defenses were raised. First, that the mortgages are infected with the taint of the illegality appearing upon the certificates so taken; and secondly, if not so affected that the entire amount paid in to the company, and not a mere dividend thereon, should be deducted from the amount of the mortgages.

The receivers stand in no better position than does the company to enforce payment. The written contract executed contemporaneously with the note and mortgage is part and parcel of the same transaction. *Jacob* v. *Mitchell,* 46 O. S., 601.

As the original business of the company was legal and authorized, the purchase of debenture certificates would have been legal except for the fact that the certificates themselves bore evidence of their vicious character. There could be no recovery on the ground that the innocent party had repented because the contracts were partially executed by both parties. *Hooker* v. *De Palos,* 28 O. S., 251.

Neither is the trust theory applicable because a trust arising *ex maleficio* is founded upon an illegal or unauthorized action of one party.

The mere fact that the reserve fund was utilized to make these loans does not sanctify it so as to warn borrowers that it is a misapplication of trust funds. Nor can the plaintiff succeed on the ground that the company and the defendant mortgagors were partners and that part of their business was illegal, and ask for an accounting on the settled business of the firm as indicated in *Davis* v. *Gelhaus,* 44 O. S., 79. See, also, *Emery* v. *Ohio Candle Co.,* 47 O. S., 320.

The general rule in Ohio and elsewhere is that a contract founded upon a consideration which in whole or in part is illegal, immoral, against public policy, or prohibited by statute, is void and will not be enforced at the instance of any party to it. The court will not assist either party to enforce it or to recover what he has parted with under the contract. The test in determining

when it applies to a plaintiff is whether his cause of action is founded upon or arises out of an illegal agreement. If it does, he must fail. In such event it leaves the parties as it finds them. If the agreement is executed, the court will not rescind it; if executory, the court will not aid in its execution. *Ins. Co.* v. *Hull,* 51 O. S., 277; *Kahn* v. *Walton,* 46 O. S., 209; *Merkley* v. *Mineral City,* 58 O. S., 431; *McQuade* v. *Rosecrans,* 36 O. S., 422; *Williams* v. *Engelbrecht,* 37 O. S., 383; *Hooker* v. *De Palos,* 28 O. S., 251; and others, beginning with the case of *Roll* v. *Raguet,* 4 Ohio, 400.

*Hooker* v. *De Palos, supra,* was a case where a vendor had sold his lands for the purpose of a gift enterprise or lottery to be set on foot by the vendee; $500, part of the consideration, had been paid thereon, and $1,000, a small part of the purchase price, was agreed to be taken in lottery tickets issued by the vendee. The vendor aided the plaintiff in certifying to the honorable character of the enterprise and in endeavoring to enlist patronage. The scheme failed. The vendor resold his property to others, and the vendee then sought to recover the five hundred dollars already paid. The seller set up the illegal contract. It was held that both parties had contributed to the illegal enterprise by furnishing money, certificates and land; that the hands of neither party were clean; and that to neither could relief be given. In that case the court found that the vendor assisted in setting the enterprise on foot and zealously aided the sale of the tickets to deceive the public. It has therefore an element not present in the case at bar unless the purchase of the debentures can be considered as aiding the enterprise of the investment company.

Chief-Justice Marshall in *Armstrong* v. *Zolar,* 11 Wheaton, 258, enunciated certain principles which have been followed as late as *Armstrong* v. *American Exchange Bank,* 133 U. S., 469. He held that "where a contract grows immediately out of or is connected with an illegal or immoral act, a court of justice will not lend its aid to enforce it. So if the contract be in part only connected with the illegal consideration and growing immediately out of it, though it be in fact a new contract, it is equally tainted with it. But if the promise be entirely disconnected with the illegal act and is founded upon a new consideration, it is not affected by the act, although it was known by the party to whom the promise was made, and al-

though he was the contriver or conductor of the illegal act. Thus where A during a war contrived a plan of importing goods on his own account from the enemy's country, and goods were sent to B by the same vessel, A at the request of B became a surety for the payment of the debts on B's goods and became responsible for the expenses on a prosecution for the illegal importation of the goods and was thereby compelled to pay." It was held that A might maintain an action on the promise of B to refund the money. "But if the importation was the result of a scheme between the plaintiff and defendant, or if the plaintiff had any interest in the goods, or if they were consigned to him with his privity in order that he might protect them for the owner and promised to repay any advances made under such understanding, the agreement was utterly void."

The mere illegality of the original business of a lender will not preclude him from recovering for money loaned in an independent transaction which was not designed to aid in the illegal enterprise. *Connelly* v. *Union Sewer Pipe Co.,* 22 Sup. Ct. Rep., 431; *Ocean Ins. Co.* v. *Polley,* 13 Peters, 157; *Armstrong* v. *Amer. Exc. Bank,* 133 U. S., 469; *Griffiths* v. *Goldsaw,* 42 W. L. B., 264; *Stanley* v. *Nye,* 51 Mich., 232.

I am unable to see how the certificates and coupons can be separated from the obligation to borrow the money or to secure and repay it. If part of the consideration is unlawful the whole agreement is void, unless such part consideration with its correlative promise can be separated in the contract. Where it is impossible to apportion the weight of the consideration in inducing the promise, the whole of it fails. Pollock on Contracts, 321; *Griffiths* v. *Goldsaw, supra; McClellan* v. *Bishop,* 42 O. S., 113; *Thomas* v. *Richmond,* 12 Wallace, 356.

*Ohio* v. *Board of Education,* 35 O. S., 519, bears similarity to the case at bar. The defendant board needing money agreed to borrow same of relator and pay him fifteen per cent. interest by issuing bonds with interest thereon at eight per cent. as limited by statute, and by delivering treasury warrants for the difference in interest. This was done. Relator returned the warrants and sued on the bonds. Illegality of contract was set up. It was held to be a case of two promises, one lawful and the other unlaw-

ful, founded on one lawful consideration, viz., the money loaned; that a contract was good for so much as is lawful and void for the residue, provided the illegal promise is distinguishable and can be separated from the lawful one. Recovery was permitted. It was stated, however, that if the purchaser had received the illegal interest he could not have recovered, because in that event the unlawful contract would have been partly executed. Relator was said to have been guilty of no illegal act punishable by statute, and the public found not to have sustained any injury. This contradistinction of promises and consideration might be the subject of criticism. The contract of usury has not the moral stain of a lottery or game of chance, and this element entered into the decision of the court.

The test, however, in determining whether the one transaction is independent of the other is whether the plaintiffs can make out their case without the medium of either the illegal contract or the illegal consideration. If their right can be so established then the agreements are severable and the plaintiffs may recover; otherwise, not. *Hoffman* v. *McMullen,* 83 Fed. Rep., 372; *Buck* v. *Albee,* 26 Vt., 190; *Jackson* v. *Dwight,* 78 Fed. Rep., 899.

This however does not mean that because there are two pieces of paper evidencing one contract, or because a *prima facie* case may be established in chief, that the transaction is severable. Although the plaintiffs offered a separate note and mortgage bearing no illegality on their face to make out such *prima facie* case, the defendants by showing that the written contract was made concurrently with the note and mortgage established but one transaction by two instruments, or by the evidence in chief as well as in defense. *Roby* v. *West,* 4 N. H., 285; *Johnson* v. *Hulings,* 103 Pa. St., 498; contra, *Odessa Tramway Co.* v. *Wendell,* 8 Ch. D., 243.

Nor would it be any the less severable because the one instrument relates peculiarly to the interest and not to the principal of the debt. This would affect merely the amount of the consideration and not its weight.

I have tried in vain to find authorities or to reason out on principle what I believed to be an equitable disposition of the case, namely, the payment of the mortgage debt subject to an offset of

all amounts paid in as indicated in *Carr* v. *Hamilton*, 124 U. S.,
—, and in *Barber* v. *Bank*, 50 O. S., 90.

The court must leave these parties as it finds them, relegating
the plaintiffs to their remedy at law if such they can find (see
*Williams* v. *Engelbrecht*, 37 O. S., 383), and permitting the lien
to remain upon the defendants' property as a standing menace to
any purchaser.   The mortgagors pray for general relief in equity.
They can not achieve indirectly what they could not directly—
affirmative relief by injunction or cancellation because of their
complicity in the wrong.   *Jacobs* v. *Mitchell*, 46 O. S., 606; *Kahn*
v. *Walton*, *supra*.

Decree accordingly.

*C. W. Baker, Miller Outcalt*, for receivers.

*Walter A. DeCamp, Swing & Morse, F. Sanford Brown, Province M. Pogue, A. C. Shattuck, Philip Roettinger, H. L. Gordon,*
for mortgagors.