### MILLS NOVELTY CO. v. DUPOUY.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1913.)

#### No. 1,905.

PRINCIPAL AND AGENT (§ 77*)—FINES IMPOSED ON AGENT FOR VIOLATION OF LAW—RECOVERY FROM PRINCIPAL.

Defendant shipped a number of coin-operating machines to Venezuela, consigned to itself in care of plaintiff, who was a commission merchant in that country. The invoices were sent to plaintiff, and by him presented to the customs office, where the machines were refused admission as gambling devices, and the case referred to the fiscal court, by which they were confiscated, and the duty and a fine adjudged against plaintiff, who paid the same and brought suit in this country to recover the amount from defendant. *Held*, that on the facts stated, in the absence of any contract by defendant to reimburse plaintiff for expenditures made in the matter, he was not entitled to recover, since defendant, not being within the country, could not have been subjected to personal liability on account of the importation, and to permit a recovery on account of fines imposed on plaintiff for a violation of law would be contrary to public policy.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 278–293, 353–359, 367; Dec. Dig. § 77.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Action at law by Adolpho Dupouy, trading as A. Dupouy & Co., against the Mills Novelty Company. Judgment for plaintiff, and defendant brings error. Reversed.

The defendant in error, Adolpho Dupouy, as plaintiff below, sued the Mills Novelty Company, as defendant, and recovered judgment (at law) for moneys expended by the plaintiff, which he alleges were incurred for fines imposed upon him, through a prosecution by the Venezuela government, for transactions in the business and at the instance of the defendant; and reversal of such judgment is sought under this writ, upon various assignments of error. The issues were submitted for trial by the court, on waiver of a jury, and the facts involved were stipulated in writing, except that a deposition of the plaintiff was received in evidence over the defendant's objections. As the trial court made "special findings of fact," and error is assigned only for conclusions of law, either made or refused, the facts so found present the reviewable issue of law. In substance the findings of fact are:

(1) The plaintiff is a citizen of Venezuela and during the year 1904 was conducting a business of commission merchant at Caracas and at La Guaira, Venezuela, and the Mills Novelty Company, defendant, was and is a corporation organized under the laws of Illinois, "conducting a business for the purpose of manufacturing and selling various coin-operating devices."

(2) The defendant, on or about February 3, 1904, "shipped 20 boxes of coin-operating machines to Venezuela, under bills of lading addressed as follows: 'Established in 1890. Mills Novelty Company, Makers of the Original and Genuine Mills Coin Operating Machines, 11–23 South Jefferson Street. Telephone No. 2017 Monroe, Chicago, U. S. A. February 3, 1904. Consigned to the Mills Novelty Company, Caracas, Venezuela. Shipped to the Mills Novelty Company, consigned care of Messrs. A. Dupouy & Company, Commission Merchants. La Guaira, Venezuela'"—and all of the machines were shipped under similar bills of lading.

(3) On or about February 22, 1904, "the plaintiff received invoices for the same machines, with the same superscription as was contained on the bills of lading hereinabove set forth. These invoices were presented to the customs officials at La Guaira," and contained the following statements type-written thereon: "Freight to New York at our expense, shipped via M. C., consigned to Blue Line, New York, care of Red D. Line Steamship Company, New York. 28 Frank Street. The above-mentioned goods are property of the Mills Novelty Company, and are consigned only to the above-indicated parties. Upon receipt of goods please accept same and return copy of this invoice immediately."

(4) "The custom house officials of the Venezuela government declared that these machines were improperly invoiced, because they came invoiced as automatic selling machines, and that they were roulette, or machines of games of chance, or gambling machines, and because they were roulettes, or gambling machines, the customs officials declared them as falling under the penalty of seizure and confiscation, and passed the case to the fiscal court. That court found against Dupouy Co., the plaintiff herein, and in the sentence declared the goods confiscated, and adjudged that Dupouy pay the duty fixed by law and an additional amount equal thereto, which the law adjudged to employés of the government discovering such matter, and in addition the costs of the process. This judgment was appealed by Dupouy to the court of last resort, and the judgment as against Dupouy and as against the goods was affirmed. Dupouy, by virtue of said judgment was fined 5,618.75 bolivares, the sum equal to the duty, and the costs, which resulted in customs court, were in addition 1,171.33 bolivares."

(5) The plaintiff "employed two attorneys to defend him in actions brought against him by the Venezuelan government" (as named) "and paid said attorneys for their services the sum of 1,000 bolivares" and the plaintiff "was

compelled to pay an additional 5,618.75 bolivares for custom dues and some 44 additional bolivares for manifest and appraisers' fee."

(6) "The plaintiff received 2,900 bolivares from a man by the name of Edwards, who was an agent of the Mills Novelty Company, and A. Dupouy applied this 2,900 bolivares, without the consent of Edwards or the Mills Novelty Company, on his claim against the Mills Novelty Company, so that the principal sum which the plaintiff had expended, after making all deductions, was the sum of 11,190.83 bolivares."

(7) "All of said sums of money were paid by the plaintiff on or about the 21st day of May, 1904."

(8) At the date of such payment "the value of a bolivar in American money was 19.33 cents."

(9) "The legal rate of interest as allowed by law at Venezuela prevailing at that time and ever since then is 8 per cent. per annum."

(10) "Repeated demands have been made by the plaintiff upon the defendant," but no payment made, except the above-mentioned sum of 2,900 bolivares.

(11) "The defendant never requested or authorized the plaintiff to pay any of said sum, or to contract any obligation for it."

(12) "The defendant shipped these goods originally under bills of lading correctly specifying the contents of the boxes, but that the agent of the express company consulted with the representative of the Venezuelan government in New York, and the representative of the Venezuelan government advised how the goods should be shipped, and they were shipped in accordance with such advice."

(13) "A man by the name of J. Edwards accompanied the shipment of said goods to Venezuela on behalf of the defendant."

(14) The amount so paid out by the plaintiff, after deducting the 2,900 bolivares received from Edwards, was 11,190.83 bolivares, equal to $2,151.99, American money.

(15) "All of said sums of money that were paid out by the plaintiff in the above matters he was compelled to pay because he was acting on behalf of the defendant."

(16) Interest on the sum so paid at 8 per cent. from the date of payment amounts to $1,347, making a total of principal and interest of $3,498.99.

The conclusions of law thereupon are thus stated: "The court concludes from the foregoing findings of fact that the plaintiff was acting as agent for the defendant in each and every one of said transactions, that the plaintiff paid all of said sums as agent for the defendant, and is entitled to receive the sum from the defendant, together with interest thereupon at 8 per cent. per annum from May 21, 1904, to March 19, 1912; wherefore judgment will be entered by the clerk in favor of the plaintiff and against the defendant for $3,498.99."

The defendant requested an entry of a conclusion of law that the plaintiff is not entitled to recover, and a further conclusion that the plaintiff is not entitled to recover the amount paid for attorney's fees, nor for interest as allowed, and filed exceptions both to the conclusion as entered and to the denial of its request. Judgment was entered in conformity with the above-mentioned conclusion of law.

Francis A. Harper, of Chicago, Ill. (Charles S. Williams, of counsel), for plaintiff in error.

Herbert Friedman, Sigmund Zeisler, and Leonard B. Zeisler, all of Chicago, Ill., for defendant in error.

Before BAKER and SEAMAN, Circuit Judges, and CARPENTER, District Judge.

SEAMAN, Circuit Judge (after stating the facts as above). Adolpho Dupouy, a citizen and resident of Venezuela, as plaintiff in the suit below, recovered judgment against the Mills Novelty Company, an Illinois company, as defendant, and the parties are referred to in this

opinion as plaintiff and defendant, respectively, in conformity with their arrangement below. The issues were submitted for trial by the court, without a jury, and special findings of fact were filed, with no assignment of error thereupon; but the issues of law are well preserved for the review sought by the defendant's writ of error.

The facts thus settled—mainly, if not entirely, embodied in stipulations of fact between the parties—may be summarized as follows: In February, 1904, the defendant was manufacturing at Chicago machines designated as "coin-operating machines," and made a shipment of 20 boxes of these machines, consigned to the defendant, at Caracas, Venezuela, in care of the plaintiff, addressed as "A. Dupouy & Company, Commission Merchants, La Guaira, Venezuela," under bills of lading and invoices which properly described the goods as above mentioned. On arrival of the consignment in New York, a person mentioned as "the agent of the express company" consulted with "the representative of the Venezuelan government in New York," who "advised how the goods should be shipped," and "they were shipped in accordance with such advice." The plaintiff received the invoices, which were forwarded by the defendant (with correct description as above mentioned), at La Guaira, February 22d, and presented them to "the customs officials." But the officials "of the Venezuelan government declared that these machines were improperly invoiced, because they came invoiced as automatic selling machines, and that they were roulette, or machines of games of chance, or gambling machines, and because they were roulettes, or gambling machines, the customs officials declared them as falling under the penalty of seizure and confiscation, and passed the case to the fiscal court. That court found against Dupouy & Co., the plaintiff herein, and in the sentence declared the goods confiscated, and adjudged that Dupouy pay the duty fixed by law and an additional amount equal thereto, which the law adjudged to employés of the government discovering such matter, and in addition the costs of the process. This judgment was appealed by Dupouy to the court of last resort, and the judgment as against Dupouy and as against the goods was affirmed. Dupouy, by virtue of said judgment was fined 5,618.75 bolivares, the sum equal to the duty, and the costs, which resulted in customs court, were in addition 1,171.33 bolivares." On May 21, 1904, the plaintiff paid the above-mentioned judgment; and he paid further sums (stated in the findings) for attorney's services and other fees. He had received "2,900 bolivares" from one "Edwards, who was an agent of the" defendant, and "without consent" thereof applied that amount "on his claim against" the defendant, but otherwise had received no indemnity from the defendant, although he had frequently demanded reimbursement. "The defendant never requested or authorized the plaintiff to pay any of said sums or to contract any obligation for it." One "J. Edwards accompanied the shipment of goods to Venezuela on behalf of the defendant." The "net amount paid out by the plaintiff" is stated to be "$2,151.99, American money," and interest is computed at 8 per cent. from May 21, 1904, making the total claim (as allowed in the judgment) $3,498.99.

It is further stated, under the heading of "findings of fact" (No. 15), "that all the said sums of money that were paid out by the plain-

203 F.—17

tiff in the above matters he was compelled to pay because he was acting on behalf of the defendant." This recital, however, plainly intends and amounts only to a deduction of law from the facts stated, and cannot be considered as a finding of ultimate fact, nor otherwise have effect for the purposes of review. Not only is it expressly found by the trial court, as above stated, that the defendant neither requested nor authorized such expenditures, nor the contracting of any obligation therefor, but there is no pretense of evidence that the defendant took part in, or had in contemplation, either any change at New York of the form of consignment or any controversy with the Venezuela customs officials over entry of the goods in that country.

The conclusion of law and judgment accordingly against the defendant (plaintiff in error) rest entirely on the foregoing state of facts, as both stipulated for submission of the issues below and stated in the findings of fact. In reference to the transactions, both in New York and in Venezuela, on which liability appears to be predicated, the record is either silent or indefinite upon matters which must be inferred as entering therein. Thus, while it is stated, in effect, that the defendant shipped the goods "correctly specifying the contents of the boxes," but that the "agent of the express company" at New York interposed therein, to ship them in conformity with advice obtained by him from "the representative of the Venezuelan government," it is neither stated how such intervention came about, nor what change was made thereby. The terms of the findings do not appear to raise any inference of defendant's authorization or knowledge of such intervention, if material in any view of the issues; but support may be assumed for the contention that the goods were shipped from New York "as automatic selling machines," through their mention in the fourth finding "as declared by the customs officials to be improperly invoiced under that name." Upon arrival of the consignment in Venezuela, the course of procedure is stated (fourth finding) as recited in the foregoing summary, but neither of these circumstances appear: (a) The provision of Venezuelan law alleged to be violated by the entry; (b) wherefore and in what manner the plaintiff intervened to incur the fines and expenses adjudged against him (for which recovery is sought against the defendant), aside from the confiscation of the goods. Furthermore, while it is stated (thirteenth finding) that one "J. Edwards accompanied the shipment of said goods to Venezuela in behalf of the defendant," it is neither found nor indicated that Edwards participated in any manner in the above-mentioned transactions at New York, or in the entry of the goods or controversy with the Venezuelan officials.

The issue of law, therefore, is narrowed, as we believe, to this inquiry: Do the ultimate facts so established of consignment and entry of the defendant's goods—namely, that they were shipped by and consigned to the defendant in care of the plaintiff, under notice to the plaintiff, for entry at a Venezuelan port, and that they were thus entered in violation (for any cause) of the law of that country, resulting in confiscation of the goods—create liability in personam against the defendant to reimburse the plaintiff for the amounts of fine and expenses incurred by the plaintiff in such unlawful transaction? Undoubtedly, violation of Venezuelan law in the entry of the goods must

be presumed from the recitals, and we believe it must further be presumed therefrom that entry of the goods was thus prohibited as "gambling machines" or devices, so that the issue of law does not require solution of the proposition urged in support of the judgment, that the fines and expenses "fell upon Dupouy because the invoices improperly and incorrectly described the goods." Whatever may have been the transactions of the plaintiff in the matter, or the cause assigned for his prosecution, it is expressly found (as before mentioned) that the goods were seized and confiscated "because they were roulettes, or gambling machines," thus determining violation of the law, for such cause, by the parties engaged in the importation; and the contention—if assumed to be tenable under the findings—that the defendant was chargeable for the alleged fact that the goods came "improperly invoiced" as "automatic selling machines," and thereby committed a further breach of Venezuelan law, cannot strengthen the plaintiff's claim against the defendant for recovery of the fines and expenses which were incurred by the plaintiff in such unlawful importation. In either phase of the transaction, both parties were presumptively engaged in violation of the law of that country, and it matters not that one or both proceeded therein without actual knowledge that the importation was illegal. So the further circumstances discussed in the arguments of counsel—in reference to the good faith of one and the other party, together with the undisputed fact that the plaintiff suffered the loss (in fines and expenses), without other interest in the importation than an attempted protection of the defendant from loss—cannot affect the question of legal liability between those parties. The unlawful entry could not subject the consignor, who was not present, to personal liability therefor, its utmost liability being in rem (as imposed) for forfeiture of the goods; and however the procedure against the plaintiff was either caused or intended, the ensuing fines and charges cannot be enforceable per se against the defendant in this country and jurisdiction. Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 286, 8 Sup. Ct. 1370, 32 L. Ed. 239. Thus the judgment rests solely on the issue above stated, whether the fact that the plaintiff was serving as an agent or representative of the defendant in such violation of the law authorizes recovery for his expenditures incurred therein.

In the absence of any undertaking by the defendant for such reimbursement, entirely apart from the employment of the plaintiff to serve and his service accordingly in the unlawful entry, we are of opinion that the authorities are uniform and conclusive against the recovery, as opposed to public policy. In the early and leading case of Armstrong v. Toler, 11 Wheat. 258, 267, 6 L. Ed. 468, the opinion by Chief Justice Marshall aptly defines the above-mentioned distinction between the contract growing "immediately out of an illegal act," which "a court of justice will not enforce," and a promise made which is "unconnected with the illegal act, and is founded on a new consideration," and "not tainted by the act," whereof enforcement may be granted; and the expressions of the opinion in reference to the independent and untainted promise which was there enforced, cited in support of the present judgment, are plainly without force to that end, under the facts here stipulated and found. The doctrine which bars this recov-

ery, epitomized in the above quotation, is applied in Trist v. Child, 21 Wall. 441, 448 [22 L. Ed. 623], and well explained as "a rule of the common law of universal application, that when a contract, express or implied, is tainted with the vice" of violation of law "as to the consideration or the thing to be done, no alleged right founded upon it can be enforced in a court of justice." Claims for reimbursement or compensation through performance of such contract by an agent for the principal are uniformly subjected to the rule referred to (see Story on Agency, § 346; Mechem on Agency, § 654), and pertinent precedents for its application appear in Monnet v. Merz, 127 N. Y. 151, 154, 27 N. E. 827, Buck v. Albee, 26 Vt. 184, 190, 62 Am. Dec. 564, and Harvey v. Merrill, 150 Mass. 1, 5, 22 N. E. 49, 5 L. R. A. 200, 15 Am. St. Rep. 159. No authorities for departure from such rule are called to our attention, and we believe further citations thereupon to be unnecessary.

The judgment of the District Court is reversed, and the cause is remanded, with direction to enter judgment upon the findings of fact in favor of the plaintiff in error, defendant below.