■ JAMES T. KELLY, JR., P. E., P. C., Appellant, v SVEN B. SCHROETER et al., Doing Business as TRUE VALUE HARDWARE, Respondents. (Action No. 1.) JAMES T. KELLY, JR., P. E., P. C., Plaintiff, v SANBORN ENTERPRISES, INC., et al., Doing Business as FABRIC CARE, Defendants. (Action No. 2.) EAGLE CREST, LTD., Appellant, v SVEN B. SCHROETER et al., Doing Business as TRUE VALUE HARDWARE, Respondents. (Action No. 3.) EAGLE CREST, LTD., Appellant, v SANBORN ENTERPRISES, INC., et al., Doing Business as FABRIC CARE, Respondents. (Action No. 4.) MARK SANBORN et al., Respondents, v JAMES T. KELLY, JR., Individually and as JAMES T. KELLY, JR., P. E., P. C., et al., Appellants. (Action No. 5.) [618 NYS2d 146] —Crew III, J. Appeal from an order of the Supreme Court (Bradley, J.), entered November 20, 1992 in Ulster County, which, *inter alia,* granted motions by various parties to set aside the verdicts in action Nos. 1, 3, 4 and 5.

This litigation arises out of the construction of a building on a parcel of property in the City of Kingston, Ulster County. The building is divided into two stores, one owned by Sven B. Schroeter (hereinafter Schroeter) and Patricia J. Schroeter and the other by Mark Sanborn and Jerry Sanborn. James T. Kelly, Jr. (hereinafter Kelly), a professional engineer and architect, formed James T. Kelly, Jr., P. E., P. C. to provide engineering services and Eagle Crest, Ltd. to provide construction management services.

Kelly and Schroeter, as president of Svenson Enterprises, Inc., entered into a contract whereby James T. Kelly, Jr., P. E., P. C. was to provide designs for a building to be constructed on the aforesaid property. Kelly completed the designs, but due to the projected costs of construction Schroeter decided not to construct the building. Thereafter, Schroeter learned of an existing steel building for sale which could be dismantled and reconstructed on the property. After considerable discussion, Kelly, on behalf of Eagle Crest, entered into separate contracts with the Schroeters and the Sanborns whereby he agreed to provide construction management services in connection with the construction of the building. It was agreed in connection therewith that Eagle Crest, rather than the owners, would enter into contracts with the various trade contractors who were to provide labor and materials in constructing the building, because this would ensure proper comprehensive insurance coverage for the project. As the fee

for construction management services, Eagle Crest was to receive $32,000 from the Sanborns and $15,664 from the Schroeters, which fees had been paid in full at the time of the instant litigation. Construction commenced and as work progressed Eagle Crest submitted invoices for expenses incurred pursuant to the various trade contracts entered into. The record reveals that Eagle Crest expended or incurred $498,989 with regard to the Sanborns' project and $229,513 with regard to the Schroeters' project, for which it was paid $368,645 and $165,141, respectively. When the owners failed to pay the balance, Kelly ceased all work on the project and commenced action Nos. 1, 2, 3 and 4.[1]

In action No. 1, James T. Kelly, Jr., P. E., P. C. sought the fees due it for the building designs prepared at the behest of Schroeter. In action No. 3, Eagle Crest sought the balance due for construction expenses on the Schroeter project and, in action No. 4, the balance due for expenses on the Sanborn project. The Sanborns and the Schroeters commenced action No. 5 claiming that Kelly and Eagle Crest breached the construction management services contract. Following a trial, the jury returned verdicts in favor of James T. Kelly, Jr., P. E., P. C. and Eagle Crest in action Nos. 1, 3 and 4 and in favor of James T. Kelly, Jr., P. E., P. C. in action No. 5. Thereafter, Supreme Court set aside the verdicts in all four actions and ordered a new trial. This appeal by Kelly and Eagle Crest ensued.

As to action No. 1, defendants contend that Schroeter entered into the contract in question as president of Svenson Enterprises, Inc. and that the Schroeters, therefore, cannot be individually liable. We agree. It is well settled that "[a] corporate agent who signs a contract within the authority of his official capacity 'will not be personally bound unless there is clear and explicit evidence that [he] intended to substitute his personal liability for that of his principal or that fraud is involved' " (Matter of Gifford, 144 AD2d 742, 744, quoting Trenga Realty v Tiseo, 117 AD2d 951). There is no evidence that Schroeter intended to substitute his personal liability for Svenson Enterprises, Inc. or that fraud was involved. Accordingly, Supreme Court properly set aside the verdict, but should not have ordered a new trial. Defendants in that action are entitled to judgment as a matter of law (see, CPLR 4404 [a]).

As to action Nos. 3 and 4, the Schroeters and Sanborns

---

1. Action No. 2 is not part of this appeal.

argue that Eagle Crest contracted with them to provide construction management services and may not, therefore, recover damages for work performed as a general contractor.[2] We agree. The record evidence is clear that the contracts in action Nos. 3 and 4 were for construction management services. Eagle Crest did not construct the building, but managed the construction of the building for an agreed-upon fee. That is undoubtedly why Eagle Crest moved to conform the pleadings to the proof, which motion was denied. We believe that the denial of that motion was an improvident exercise of Supreme Court's discretion and should have been granted *(see, D'Antoni v Goff,* 52 AD2d 973, 974). In any event, the Schroeters and Sanborns further contend that as a construction manager, Eagle Crest is foreclosed from recovery because the liability of the owners under the contracts is to the trade contractors, not Eagle Crest. We disagree. While it is true that under a construction management contract the owner is in contractual privity with the trade contractors either directly or through the construction manager as agent and is, therefore, contractually liable to the trade contractors for work performed on the building, it is equally true that the owner, as principal, is obligated to reimburse the construction manager, as agent, for expenditures incurred in the execution of the agency *(see, Monnet v Merz,* 127 NY 151; *Webb v Friedberg,* 197 App Div 480). While there is record evidence which might justify a verdict in Eagle Crest's favor in action Nos. 3 and 4, we agree with Supreme Court that there must be a new trial inasmuch as the jury never was instructed as to agency and did not, therefore, determine whether Eagle Crest was entitled to recover upon such a theory and, if so, to what extent.

As to action No. 5, we agree that the verdict was irrational and against the weight of the evidence. Kelly conceded at trial that he never developed a construction schedule, never kept a daily log, never made any written inspection reports, never summarized additional costs, never provided monthly budget comparisons and never sent reports indicating whether the project was within budget, all matters specifically called for pursuant to the contracts for construction management. There also was evidence that improper elevations and excavation spots were used in constructing the building and that Kelly

2. Eagle Crest claimed in its complaint, *inter alia,* that it agreed to do all the work and furnish all of the materials in connection with the building in question for an agreed-upon price.

failed to have the defective work corrected. Accordingly, Supreme Court was correct in setting the verdict aside and directing a new trial.

Cardona, P. J., Mikoll and Yesawich Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by granting judgment in defendants' favor in action No. 1, and, as so modified, affirmed.